Entered on Docket July 24, 2017

**Below is a Memorandum Decision of the Court.**



_____
**Brian D. Lynch
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: | Case No. 13-46178-BDL |
| NOEL NELSON VILLEGAS<br>VENUS PICARDAL VILLEGAS, | **MEMORANDUM DECISION ON<br>TRUSTEE'S MOTION TO MODIFY PLAN** |
| Debtors. | |

This case presents one of the many conundrums that arise when trying to determine how to treat a post-petition, non-income, asset received in a Chapter 13 case. In this case, the question is what to do about settlement proceeds from a post-petition, post-confirmation auto accident involving one of the debtors, Noel and Venus Villegas (the "Debtors"). The Chapter 13 Trustee Michael Malaier ("Ch. 13 Trustee") filed a Motion to Modify the Debtors' Ch. 13 Plan on March 2, 2017 (ECF No. 119) seeking to have Debtors' $24,500 personal injury claim settlement distributed to the unsecured creditors via the plan (the "Motion to Modify"). The Debtors filed a Response (ECF No. 123) asking the Court to deny the motion as they needed to use most of the $24,500 for their current expenses. After a preliminary hearing, the Court

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**
1

allowed the parties to file supplemental briefs on issues brought up at the hearing, which were filed by both the Ch. 13 Trustee and the Debtors. (ECF Nos. 129 and 130).

## Factual History

The Debtors filed their Ch. 13 Petition on September 30, 2013. Their original Ch. 13 Plan was confirmed on February 27, 2014 and disclosed a liquidation value of $0.00. (ECF No. 2, p. 4). Debtors' confirmed plan proposed to pay $27,931.44 by reason of their disposable income. (ECF No. 38, p. 3)

The Debtors were involved in a post-confirmation automobile accident on April 25, 2014. They retained the Tacoma Injury Law Group on May 2, 2014 to pursue a personal injury claim. They did not disclose the cause of action in this case until November 2016, after they reached a settlement for the $24,500. On November 1, 2016, the Debtors amended their Schedules A, B and C to disclose a "personal bodily injury claim for traffic accident on April 25, 2014" in the amount of $16,000. (ECF No. 104, p. 8, and ECF No. 105, p. 5). They attempted to exempt this entire amount in their Schedule C under 11 U.S.C. §522(d)(11)(D). On November 7, 2016, the Debtors filed a Motion to Appoint Special Counsel *nunc pro tunc* (ECF No. 106), and to approve the settlement of their personal injury claim (ECF No.107).[1]

The Ch. 13 Trustee opposed the Motion to Appoint Special Counsel *nunc pro tunc* (ECF No.109), objected to the Debtors' newly claimed exemption (ECF No.108), and asked that the settlement proceeds be held by the Ch. 13 Trustee pending resolution of the objection to exemptions. The Debtors did not to respond to the Ch. 13 Trustee's objection to the Debtors' exemptions, and an order was entered on February 3, 2017 denying the Debtors' claimed exemption to the settlement proceeds (ECF No. 118).

---

[1] The Court notes that although the Court has orally approved the settlement as reasonable, the Debtors' order submitted on the motion was lodged because it sought relief inconsistent with the Court's ruling. The Court asks the Debtors to submit a revised order limited to approving the settlement.

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

2

**Below is a Memorandum Decision of the Court.**

On March 2, 2017, the Ch. 13 Trustee filed the subject Motion to Modify Confirmed Plan pursuant to 11 U.S.C. §1329(a). The Ch. 13 Trustee sought to pay certain expenses of the personal injury case, and pay the remainder of the $24,500 settlement proceeds to unsecured creditors, after payment of administrative claims. The Ch. 13 Trustee argued that all the proceeds of the settlement should come into the plan because they were a windfall to the Debtors and Debtors had no other post-petition expenses related to the accident and no valid exemption in the funds. The Ch 13. Trustee concluded that Debtors had this unencumbered asset that was available for payment to creditors and to remain in good faith under their plan, Debtors needed to commit it to repaying their creditors.

On March 7, 2017, the Court entered an Agreed Order withdrawing the Motion to Appoint Special Counsel *nunc pro tunc*, and also providing that the $24,500 in settlement proceeds would be held by the Ch. 13 Trustee subject to further order of the Court. (ECF No. 122) (in addition, the law firm disclaimed its contingent fee).

On March 15, 2017, the Debtors filed a Response to the Motion to Modify (ECF No. 123), requesting that the Debtors be permitted to use a portion of the $24,500 in settlement proceeds for their current and future expenses, including *inter alia,* repayment of two post-petition loans from Mrs. Villegas's brother for home repairs, furnishings, automobile parts, and dental work.

On March 22, 2017, the Court held a hearing on Ch. 13 Trustee's Motion to Modify. At the hearing, the Court raised questions concerning how the post-petition personal injury proceeds should be analyzed under the provisions of the Bankruptcy Code, beyond the Ch. 13 Trustee's reliance on "good faith." The Court asked first, whether the funds should be considered as part of the liquidation value of the estate and thus analyzed in terms of whether the Debtors were still in compliance with the "best interests of creditors" test under 11 U.S.C. §1325(a)(4). Second, the Court inquired whether the Debtors should receive any credit toward any "best interests of creditors" test number for funds paid to unsecured creditors under the

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

3

**Below is a Memorandum Decision of the Court.**

disposable income test. The Court took the matter under advisement and permitted the parties to file additional briefs.

In the Ch. 13 Trustee's Supplemental Memorandum and Points of Authority (ECF No. 129), the Ch. 13 Trustee argued that the liquidation value[2] of the estate should not be recalculated upon plan modification and therefore the Debtors only needed to meet the liquidation value calculated at the original confirmation to meet the "best interests of creditors" test under § 1325(a)(4), in this case $0.00. He also continued to argue that the Court should simply employ a "good faith" analysis to determine whether the proceeds of the personal injury settlement should be paid into the estate for payment to unsecured creditors, citing *In re Mattson,* 486 B.R. 361 (B.A.P. 9th Cir. 2012).

The Debtors argued in their Supplemental Response to Trustee's Motion to Modify Confirmed Ch. 13 Plan (ECF No. 130) that they were entitled to receive all but $5,702.13 of the $24,500 in settlement proceeds. The Debtors arrived at that number by claiming that their confirmed plan provided for the payment of $27,931.44 to unsecured creditors' claims based on their disposable income. They acknowledged that $5,702.13 was necessary to make up a shortfall on the amount they had committed to paying unsecured creditors under their plan. (ECF No. 130, p. 5).

In their supplemental response, the Debtors did not contest that the Ch. 13 Trustee has satisfied §§ 1322(a) or 1322(b) or that those sections acted as a bar of the Ch. 13 Trustee's proposed modification. The Debtors conceded that the settlement proceeds are not "earnings or other income" and are property of the estate "subject to payment of unsecured creditors' claims." (ECF No. 130, p.4). The Debtors asserted that the "best interests of creditors" test under §1325(a)(4) is satisfied by the Ch. 13 Trustee's proposed modification, whether the test

---

[2] Throughout this decision, the Court uses the term "liquidation value" interchangeably with the "best interests of creditors" number, to denote the calculation under § 1325(a)(4).

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

4

is applied as of the original confirmation date or later. (ECF No. 130, p. 3). They base this conclusion upon their calculation that the liquidation value of the estate under the Trustee's proposed modification would be $14,633.22, taking into account the non-exempt settlement funds remaining after costs are paid. *Id.* The Debtors claim that the "best interests of creditors" test will be satisfied with their $5,702.13 proposed contribution from the settlement proceeds plus the portion of their monthly payments devoted to unsecured creditors ($22,229.31). The Debtors argue that these payments to unsecured creditors will exceed whatever "best interests of creditors" number is used. *Id.*[3]

Prior to a ruling on the Motion to Modify, the Debtors again amended their Schedules B and C in an attempt to exempt 100% of the $24,500 in settlement proceeds under 11 U.S.C. §522(d)(5). (ECF No. 125). On April 26, 2017, the Ch. 13 Trustee filed an Objection to Exemptions (ECF No. 132) to the Debtors' newly claimed exemptions filed on March 29, 2017. The basis of the Ch. 13 Trustee's Objection was that <u>only</u> Mrs. Villegas could apply her "wild card" exemption under 11 U.S.C. §522(d)(5) because the personal injury settlement was her separate property, and the Debtors had already used $18,022.31 of their exemption on their joint assets. The Ch. 13 Trustee requested that the Debtors' exemption be limited to $3,738.84. The Debtors again did not respond to the Ch. 13 Trustee's Objection to Exemptions, and an order was entered on May 25, 2017 sustaining the Objection to Exemptions except as to the amount of $3,738.84. (ECF No. 136).

---

[3] The Debtors argue that the Court does not need to decide the "best interests of creditors" issue because their current plan will pay more than whatever number the Court calculates. But the Court does need to determine and set that number going forward to establish the baseline of what Debtors need to pay under their plan. The plan has over 18 months remaining, and at any time the Debtors could file a motion to reduce their distribution to unsecured creditors under the disposable income test if their income decreases or expenses increase. Whatever they might propose in the future in terms of disposable income, the modification will have to pay at least the amount of the established liquidation value in order to meet the "best interests of creditors" test.

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

5

**Below is a Memorandum Decision of the Court.**

## Conclusions of Law

The Court finds that there are no material factual disputes regarding the motion to modify, with one exception which the Court will discuss *infra,* and makes the following conclusions of law.

The $24,500 in settlement proceeds are property of the estate because the Debtors had a property interest in the proceeds prior to the closure of the case. In a Ch. 13 case, property of the estate includes "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted. . . ." 11 U.S.C. §1306(a)(1). The Debtors conceded that the settlement proceeds were property of the estate when they stated "it is undisputed that Mrs. Villegas's settlement proceeds are property of the estate under 11 U.S.C. §541 and . . . §1306, and are, accordingly, subject to payment of unsecured creditors' claims." (ECF No.130, p. 4).

Section 1329(a) provides that "at any time after confirmation of the plan. . ., the plan may be modified, upon request of the . . . trustee . . . to (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan . . ." Section 1329(b)(1) provides that §§ 1322(a), 1322(b), 1323(c) and 1325(a) apply to any modifications. As the moving party, the Ch. 13 Trustee bears the burden of proof to show facts supporting modification of the plan. *In re Morris,* No. 11-1240, 2011 WL 7145880, at *5 (B.A.P. 9th Cir. Dec. 23, 2011).

The Court discerns three issues with respect to whether the proposed modification meets the requirements of 11 U.S.C. §1329. First, whether the Debtors must pay into the plan the non-exempt post-confirmation settlement proceeds in order to comply with the "best interests of creditors" test of 11 U.S.C. §1325(a)(4). Second, if the post-confirmation settlement proceeds are included in the calculation of the "best interests of creditors" test, whether the Debtors are entitled to a credit for payments they are already making into the plan for distribution to

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

6

unsecured creditors under the disposable income test. And third, regardless of the answers to the first two issues, whether the Debtors should have to pay some or all of the proceeds to the creditors in order for the Debtors' plan to be in good faith.

### 1. Whether the Proposed Modification Satisfies the "Best Interests of Creditors" Test of §1325(a)(4)

To be confirmable, a plan must meet §1325(a)(4)'s "best interests of creditors" test. That test requires that

> "the value, *as of the effective date of the plan*, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

(emphasis added). The test involves a hypothetical calculation of the estate to determine what unsecured creditors would receive if instead of a Ch. 13, the nonexempt assets of the estate were liquidated in a Ch. 7. The plan must propose at least that much to be paid to unsecured creditors. The determination is made as of the "effective date of the plan." This Court has previously held that the phrase, "as of the effective date of the plan" refers to the date of the original plan confirmation (here February 27, 2014) and not the date of a subsequent modified plan. *See In re Wright*, 12-47120-BDL, ECF No. 57 (Bankr. W.D. Wash. April 4, 2014) pp. 6-10. In *Wright*, this Court adopted the analysis in *In re Forbes,* 215 B.R. 183, 189 (B.A.P. 8th Cir. 1997) concerning the timing of the "effective date of the plan." In *Forbes*, the Eighth Circuit held that the "best interests of creditors" test applies to the modified plan in the sense that the modified plan must still meet the best interests number calculated at the time of confirmation, but it is not something that can be changed according to the vagaries of values of assets over the life of the plan. *Id.* at 189-90. The leading case for the opposing view is *In re Barbosa,* 236 B.R. 540 (Bankr. D. Mass. 1999), *aff'd,* 235 F.3d 31 (1st Cir. 2000), which argues that the effective date of a modified plan for purposes of liquidation value is the date of the plan modification.

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

7

The Court's view that the liquidation value should not be re-visited after confirmation of the original plan is also consistent with Ninth Circuit precedent. *In re Hoopai,* 581 F.3d 1090, 1101 (9th Cir. 2009); *In re Gibson,* 415 B.R. 735, 739 (Bankr. D. Ariz. 2009) ("And as the Ninth Circuit analysis in *Hoopai* suggests, once the plan became binding on creditors, that event defined the plan's effective date. Modification of the terms of the plan makes no change to its effectiveness in binding creditors, and therefore cannot change the date on which it became effective.")

However, *Wright* involved re-valuing property when a potential claim existing on the petition date turned out to be worth less than what the debtor estimated at confirmation, not property acquired by the estate post-confirmation as in this case. And the Court's decision in *In re Wright* acknowledged that post-confirmation property presents another twist on the "best interests of creditors" test of § 1325(a)(4). Neither *Hoopai* nor *Gibson* address this issue, either. At least one court has held that when property is acquired post-confirmation, §1325(a)(4) requires that the "best interests of creditors" test be "re-determined" at the time of confirmation of the modified plan. *In re Roberts,* 514 B.R. 358, 365 (Bankr. E.D.N.Y. 2014). The *Roberts* court concluded that this was consistent with *Barbosa*, holding that the "best interests of creditors" test be determined as of the effective date of the modified plan. While this Court views the result reached in *Roberts* as correct, it disagrees with the conclusion that the "best interests of creditors" number under § 1325(a)(4) is re-determined each time a motion to modify is considered.

The Court advocates an alternative, one consistent with prior Ninth Circuit precedent that the value of an asset in existence at the time of filing is determined once and for all at the time of confirmation (the "effective date" referred to in § 1325(a)(4)). If there is an asset that comes into the estate post-confirmation, that asset must be valued as of the date of any modification motion for purposes of § 1325(a)(4) and the nonexempt value of that post-confirmation asset

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

should be added to the previously calculated best interests of creditors number. Using this approach, the "best interests of creditors" number used at confirmation can only be adjusted at a subsequent plan modification, for assets acquired post-confirmation and not included in the original calculation under § 1325(a)(4). So here, the value of the post-confirmation asset of the estate ($24,500 less the $3,738.84 allowed exemption against the settlement proceeds) should be added to the calculation of the Debtors' best interests of creditors number in determining whether the modified plan satisfies § 1329.

**2. Whether the Payments Already Made by the Debtors to Unsecured Creditors to Satisfy the Disposable Income Test Should Be Credited Toward the "Best Interests of Creditors" Test**

The Debtors contend that the payments they have made or will make to satisfy the disposable income test, to the extent they meet or exceed the amount of the "best interests of creditors" number, should also satisfy the "best interests of creditors" test. They propose to set aside from the settlement proceeds the sum of $5,702.13, representing the remaining amount they will owe to unsecured creditors under the disposable income calculation in their confirmed plan at the conclusion of their plan payments ($27,931.44 - $22,229.31 = $5,702.13). The $27,931.44 amount would exceed the best interests number resulting from the settlement proceeds less the agreed exemption ($24,500 – $3,738.84 = $20,761.16). Therefore, they argue that their previous and proposed payments to unsecured creditors from their disposable income under the plan meet the requirement of the "best interests of creditors" test of §1325(a)(4) and that they should not have to stack the new best interests of creditors number atop the payments they have already made or propose to make toward the disposable income calculation made at confirmation.

A variation on this issue was considered in *In re Moglia*, No. 11-35022, 2014 WL 7405443 (Bankr. D. Or. Dec. 30, 2014), where the court rejected the argument that the "best interests of creditors" test of §1325(a)(4) and the "best efforts" test of §1325(b)(1)(B) are

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

9

cumulative. *Id.* at *4. The Court explained that the "best interests of creditors" test is a "floor," i.e., the minimum amount that creditors must receive in a Ch. 13, whereas the "best efforts" test functions as a ceiling. *Id. Moglia* follows the leading cases and authorities on this issue.

> The amount paid to unsecured creditors must meet both the best interest test [in § 1325(a)(4)] and the projected disposable income ["PDI"] test [in § 1325(b)(1)(B)], but the same payments from income used to satisfy the PDI test will also satisfy the best interest test. For example, if the PDI test requires the debtor to pay $200 per month to unsecured creditors over 60 months, a total of $12,000, and payments of $200 per month are also sufficient to satisfy the best interest test, the plan meets the requirements of both tests.

*Id.* (citing W. Homer Drake, Jr. et al., Chapter 13: *Practice And Procedure*, §8:1 (Westlaw, updated December 2014)). Moreover, the Court in *Moglia* implies that if the debtor had acquired post-confirmation assets the creditor would have been within his rights to seek to modify the plan to increase the amount of the best interest number. This Court is faced with the logical extension from *Moglia*, and concludes that a creditor or trustee may seek to modify a plan post-confirmation to increase the distribution to unsecured creditors when a new asset is recovered post-confirmation based upon the "best interests of creditors" requirement of §1325(a)(4), but the Debtors are entitled to a credit against any amount owed under §1325(a)(4) for payments made or to be made under the plan to unsecured creditors by reason of the "disposable income" test of §1325(b). In fact, that is the essence of Ch. 13, paying the value of assets which might otherwise be liquidated by a trustee in a Ch. 7, from the debtor's income over the life of the plan.

### 3. Whether the Proposed Modification Satisfies the Good Faith Requirement of § 1325(a)(3)

Modified plans under § 1329 must meet the good faith requirements of § 1325(a)(3). The Ch. 13 Trustee argues that to satisfy the good faith requirement the Debtors must not only pay the disposable income previously determined at confirmation and subsequently disbursed or to be disbursed by the Ch. 13 Trustee, but must, in addition, pay the settlement proceeds from the

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

10

personal injury case, net of the available exemption ($24,500 - $3,738.84 = $20,761.16). The Ch. 13 Trustee analogizes to the *Sunahara* decision of the Ninth Circuit Bankruptcy Appellate Panel, which held that the disposable income test of § 1325(b) is specifically not incorporated as a requirement of modifications under § 1329, and bankruptcy courts looking to the question of whether a modification commits a reasonable amount of disposable income should apply the good faith test of §1325(a)(3). But that approach was necessary because the *Sunahara* court held that the disposable income test under §1325(b) is not applicable under §1329, whereas the "best interests of creditors" test is expressly made applicable to plan modifications under §1329(b)(1).

      Implicit in the Debtors' argument that their payments to unsecured creditors in satisfaction of the disposable income test should also be credited toward whatever determination is made in the "best interests of creditors" test, is their view that their disbursements to unsecured creditors in satisfaction of those tests meet the good faith requirement of § 1325(a)(3), and they should not have to pay the settlement proceeds on top of those disbursements. The Debtors further argue that they need the settlement proceeds to pay expenses they have incurred in the course of their Ch. 13 case, and that if the settlement proceeds are paid out to prepetition unsecured creditors, they will need to reduce their plan payment (and their disbursements to unsecured creditors) in order to pay certain post-petition debts they have incurred. As the Court has already held that the payments made to creditors in satisfaction of the disposable income test can be credited toward amounts owing under the "best interests of creditors" test, it is a dubious proposition that the Debtors nonetheless must commit the settlement proceeds to the plan in addition to the distribution to unsecured creditors already made from their disposable income, to comply with the good faith requirement of § 1325(a)(3). This is especially true if, as the Debtors contend, they have legitimate post-petition expenses which they need to pay from the settlement proceeds. Nevertheless, whether a plan

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

complies with the good faith requirement of § 1329(a)(3) is a fact question which requires that the Court take evidence if the parties cannot resolve that issue.

## Conclusion

The Court concludes that the non-exempt value of the post-confirmation personal injury settlement ($20,761.16) must be included in the "best interests of creditors" calculation in any modified plan, but the Debtors are entitled to a credit against said amount for any funds disbursed or to be disbursed to the unsecured creditors through the plan. The Court is denying the Ch. 13 Trustee's Motion to Modify, but would confirm a modified plan that is consistent with the Court's rulings herein. To the extent that a portion of the settlement proceeds is necessary to make up a shortfall on the disposable income number in the confirmed plan (the Debtors suggest that the amount necessary to make up the shortfall is $5,702.13 but the Court wants that number verified by the Ch. 13 Trustee), that amount should be paid into the estate from the settlement proceeds, but the remainder of the settlement proceeds should be refunded to the Debtors. The Ch. 13 Trustee is directed to prepare an order consistent with this ruling, updating the numbers to the extent any further payments have been made to unsecured creditors subsequent to the hearing on this motion.

/// END OF ORDER ///

**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO MODIFY PLAN**

12